[Crim. No. 3237.   First Dist., Div. Two.   Feb. 1, 1957.]

THE PEOPLE, Respondent, v. RAYMOND TRICHE, Appellant.

George Nye, Public Defender, and Martin N. Pulich, Assistant Public Defender, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

THE COURT.—Appellant, together with his codefendant Rose Tregre, was found guilty by the court, a jury hearing being waived, of violation of section 11500 of the Health

and Safety Code in that on September 27, 1955, they unlawfully had in their possession some heroin. He had admitted three prior convictions, of which two were for violation of section 11500, *supra*. His motion for a new trial was denied and he was sentenced to San Quentin, the judgment to run concurrently with other terms, if any, to which he had been sentenced. He appeals from the order denying the motion for a new trial and from the judgment of conviction.

Over the objection of the defendants, the court at the trial admitted into evidence four bindles of heroin seized in the search of an apartment at 714 - 32nd Street in Oakland, and also a statement voluntarily given to police officers and signed by appellant in which he admitted that the apartment had been rented by the defendants together, that they had lived there together for about 12 days, that they had bought the heroin together (they disagree as to whose money was used for the purchase), that both had used part of it, that they had put the remainder into bindles, that he had placed the bindles in the closet where they were found and that they belonged to both of them. Appellant's objection was based on the contention that both the signed admissions and the proof of the corpus delicti were the result of and vitiated by an illegal search. The overruling of this objection constitutes the only grievance on appeal.

The foundation laid by the People for the admittance of said evidence was to the following effect: On September 27, 1955, at 11:30 a. m., Officer Ingram of the Oakland Police Department, Special Services Division, received a telephone call from a reliable informant, who was known to him and had given him reliable information before, but whose name he refused to divulge, that he had seen four bindles of heroin in a closet at 714 - 32nd Street in a rear apartment in which Rose Tregre and Ray Triche were living. The officer had stopped Rose Tregre a number of times on the street and in examining her arms had found puncture marks and scars like those of narcotic users; he also knew that she associated with narcotic users and narcotic dealers. He had known Triche since 1950 when Triche was arrested for investigation of narcotics. He associated Triche with the narcotic traffic and had stopped him also a number of times and checked his arms. After receiving the above information the officer, together with a second one, without procuring a search warrant, went to the address given him. The informant also came there, repeated his information and indicated the apart-

ment to which he had referred. The officers waited in the community bathroom near the apartment and when Rose Tregre came from outside and entered the apartment they arrested her, searched the closet and found and seized the bindles.

In itself the information of the known reliable informer of which the officer had good past experience, together with the circumstances regarding the suspects known to the officer which indicated probability of the correctness of the information given, constituted reasonable cause for the arrest and for the search, incident to the arrest, of the place where the arrest was made. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; see *Aitken* v. *White,* 93 Cal.App.2d 134, 145 [208 P.2d 788].) However, appellant both in the court below and on this appeal took the position that the arrest, the search and all the evidence introduced were vitiated by the fact that the unnamed informant was himself a peace officer of the State of California, who obtained the information transmitted to the arresting officer by means of an allegedly illegal search without a warrant of the apartment of defendants in their absence. Defendants produced as a witness for the defense Gunnar Gunheim, a parole officer of the State of California, who testified in substance that appellant was one of his parolees and that on the morning of September 27, 1955, he informed the Oakland Police Department of having seen four bindles of heroin in the apartment at 714 - 32nd Street after he had searched it that morning without a warrant in his capacity as parole officer of appellant, under the following circumstances: Appellant was on parole for a narcotics violation and for robbery. He had given to the witness, as his home address, a number on 57th or 59th Street, which the witness had on file. On September 21, 1955, he saw appellant driving a car (for which he had no permission). He followed the car until it stopped in front of the 32nd Street apartment. Questioned, Triche explained that the car belonged to Mr. and Mrs. Tregre who were living there. Triche introduced the officer in the apartment to Rose Tregre, who at the request of the officer produced papers showing that the car belonged to her and her husband. The tenor of the conversation was that she and her husband were living there. Triche's driving the car in connection with the requirements of his parole was discussed. Thereafter the officer checked on Rose Tregre with the police and obtained the information that her husband

was not around but was either in jail or out of town. He also obtained the rumor that appellant was living at the apartment and information, mainly from the police, that he was using narcotics. The officer therefore had him under surveillance for parole violation because of the above circumstances among which was the association with people of bad reputation like Rose Tregre. On the morning of September 27th he went to the apartment on 32nd Street which in his opinion was the residence of appellant. He asked the landlady if Ray Triche was home and she said, "You mean the couple living in the end apartment." She said she thought they were not home. After identifying himself as parole officer, he asked her if she would open the door of the apartment, which she did, using a key. The officer then entered the apartment, found in the closet the four bindles wrapped in foil, which he replaced. He left the apartment and phoned the police department and on his return conferred with Officer Ingram, but did not stay until the arrest of Rose Tregre. He summoned appellant by telephone to report to him the next morning, and then took him to the vice squad where appellant was held for investigation of parole violation.

The question whether the search by the parole officer was illegal is largely governed by the special character of the relation between such officer and and his parolee, ably analyzed in the recent case of *People* v. *Denne,* 141 Cal.App.2d 499, 507-510 [297 P.2d 451]. ▆ It was there held that the granting of parole does not change the status of a parolee as a prisoner. He is in penal custody in a prison without bars, subject to the rules and regulations for the conduct of paroled convicts to be enforced by the parole officer. For the protection of the community as to whose security the parolee constitutes a calculated risk, the parole officer exercises an ubiquitous supervision over him, including broad visitatorial powers. ▆ Having constructive custody of his prisoner at all times, there is nothing unreasonable in a parole officer's search of the prisoner's premises where he has reasonable cause to believe that the parole has been breached. It is unnecessary for a parole officer to apply for a warrant to arrest a parolee, who is already his prisoner and who is at all times in custodia legis. In the case before us there was reasonable cause to believe that Triche had breached his parole and the search of the premises where he admittedly lived and acted in violation of his parole was under the above

rule no invasion of his constitutional right to be free from unreasonable searches or seizures.

All the above is not seriously disputed by appellant, but it is his contention that the search by the parole officer without a warrant from which the evidence resulted was, as to Rose Tregre, to whom the parolee-parole officer relation did not apply, unreasonable both because the premises searched were also her premises and because the parole officer at the time of the search had allegedly no knowledge that the premises were those of his parolee. It is said that the officer did not know that his parolee was on the premises in a relation which gave him control and not as a mere visitor or guest. Appellant then argues that he can urge exclusion of the evidence which is a product of illegal action on a peace officer of the state, even if his own rights have not been violated because the rationale of the exclusionary rule, to deter law enforcement officers from obtaining evidence in a lawless manner, equally applies. (*People* v. *Martin*, 45 Cal.2d 755, 759-761 [290 P.2d 855].) The alleged violation of the rights of the codefendant Tregre distinguishes this case from the Denne case, *supra*.

We need not decide in general how far the right of a parole officer extends to search premises which are not under the exclusive control of his parolee or to which the relation of his parolee is not known with certainty. In this case the action of the parole officer in this respect was not of the reprehensible character which requires the deterrent of exclusion of the evidence resulting from his search. Here, the defendants, although not married, actually lived together in the apartment which they had rented as if they were a married couple. ■ We have no doubt that the fact that a parolee is married and is living with his wife will not prevent the parole officer from searching his premises without a warrant when there is reasonable cause to believe that he has violated his parole; the wife will then be in no position to complain of violation of her right of privacy, which because of her living with a parolee subject to special rules of supervision, must be to some extent restricted in the public interest. We see no reason why the same should not apply to the woman who lives with a parolee as if they were a married couple, without such actually being the case.

■ The fact that the parole officer lacked grounds for certainty as to the relation of the defendants and their joint occupancy of the apartment cannot change the above con-

clusion. A requirement of absolutely certain knowledge in advance as to all factual circumstances of importance in relation to an intended arrest or search would unduly hamper the necessary activity of peace officers. In *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469], it was held that where officers had in good faith with the consent and at the request of the home owner conducted a search of a room which a student suspected of possession of narcotics occupied in the home in exchange for doing the gardening, evidence so obtained could not be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner's authority to consent to the search of a room which may have been that of a tenant, a servant, or a guest. In the present case it is certain that the officer did not even make a mistake in assuming that appellant was living in the apartment in concubinage with the woman as tenants. He had reasonable cause for this assumption after the landlady in answer to his question whether Ray Triche was at home had said: "You mean the couple living in the end apartment." We hold that the search by the parole officer was not illegal.

When in his lawful search the parole officer discovered evidence of the crime for which the defendants were tried, he was under no duty to ignore it, though the search was made for the investigation of parole violation, and he acted correctly in communicating his discovery to the police officers responsible for the enforcement of narcotics laws. (*Cf. People* v. *Roberts,* 47 Cal.2d 374, 378-379 [303 P.2d 721].) Their subsequent search was not vitiated by any illegality.

Judgment and order affirmed.